## Richmond

### MILTON & OTHERS V. KITE & OTHERS.

#### November 21, 1912.

1. EQUITY PLEADING—*Multifariousness—Alternative Relief.*—Where the sole object of a bill is to make good the complainant's title to a tract of land by establishing the validity and binding force of a paper filed with the bill which the complainant prays may be set up as will, but if this cannot be done, that it be adjudged to be a binding contract and specifically enforced, the bill is not multifarious, but simply seeks alternative relief.

2. SPECIFIC PERFORMANCE—*Case in Judgment.*—The bill, in the case in judgment, states a case for the specific execution of a contract which has been so far performed by the complainants that it would operate a fraud upon their rights to deny to them the relief which they seek, and the statements of the bill are fully sustained by the evidence.

3. WITNESSES—*Competency—Case in Judgment.*—A testator made a will by which he devised a tract of land to his two daughters, K and D. Afterwards he persuaded the husband of K to raise $1,200 and pay it over to D, promising that if he would do so, he, the testator, would devise to K and her husband the share in his real estate which he had given by his will to D. The husband raised the money and paid it to D, the testator writing the receipt. No change was made by the testator in his will, and the will itself was lost or destroyed and never probated. In a suit by K and her husband against the heirs of the testator to set up the lost paper as a will or else to enforce it as a contract, D is a competent witness to testify on behalf of K and her husband.

4. SPECIFIC PERFORMANCE—*Promise to Make a Will.*—While an agreement to dispose of property by will cannot be specifically enforced, either before or after the death of the party, courts of equity can do what is the equivalent of specific performance by compelling those upon whom the legal title has descended to convey and deliver the property in accordance with the terms of the agreement, upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative or purchaser, with notice of the agreement, as the case may be.

Appeal from a decree of the Circuit Court of Page county. Decree for the complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*E. J. Armstrong, W. F. Keyser,* and *Charles A. Hammer,* for the appellants.

*R. S. Parks, Marshall McCormick,* and *Leedy & Berry,* for the appellees.

KEITH, P., delivered the opinion of the court.

F. W. Kite and Dora, his wife, filed their bill in the Circuit Court of Page county, in which they state that Daniel F. Brown died in January, 1907, leaving four children—Dora; Delilah, who married W. R. Milton; Lenora, who married Timothy Driscoll, and Elizabeth S. Barton, wife of J. A. Barton, deceased—that Dora Kite lived with her father and mother, worked for and waited on them up to the death of her mother, which preceded that of her father, her sisters having all married before that date; that after the death of her mother she continued to live with her father, and after her marriage her father insisted upon her still living with him at the home place, as he was becoming old and feeble; that Daniel F. Brown made a will some years before his death, dividing his property between his children; that Mrs. Driscoll's husband was engaged in railroad work with the Norfolk and Western Railway Company, and said company proposed to change his position and send him to West Virginia, and Daniel F. Brown did not wish him to go, both on account of separation of the family and because he thought the position was fraught with danger; that Daniel F. Brown came to the conclusion

that if the sum of $1,200 could be realized at once in cash and paid over to him that Driscoll would abandon railroad work and go into some other kind of business; that acting under this impression her father sought her husband (Kite) and asked him to raise the said sum of money and pay it over to Mrs. Driscoll; that Kite told him he did not have the money and could not raise it without selling his place, which he did not wish to do, but her father, Daniel F. Brown, seemed to be worried about the matter and was so persistent, saying that Kite could sell his place, pay the money, and his wife and himself would then own all the home place in one body, and it would be more convenient for him, that he had fixed it in his will; that by his persuasion Kite did sell his home and pay to Mrs. Driscoll the sum of $1,200, as provided in said will, and a receipt for the purchase price is filed with the bill as an exhibit; that complainants thought they ought to have a deed or some paper besides the receipt, and so expressed themselves to Daniel F. Brown, but he assured them that it was not necessary, that he had fixed it all in his will, and at the same time got the will and handed it to complainants, saying, "Here it is; take it and keep it. It is all right, and you just take possession and go ahead, as that will is as good as any deed that can be made;" that they, relying upon his superior knowledge and experience, took the will, put it carefully away and rested absolutely contented that their rights and interests were amply secure; that the house in which they lived on the land thus willed to them was very old and not at all comfortable, and that Kite cut timber from the land, sawed it and erected a good two-story frame house on the land on or near the site of the old building, the entire cost of labor and material being paid for by Kite with his own means, and this was all done in the lifetime of Daniel F. Brown, by his advice and with his knowledge and consent; that during the latter years of

his life Daniel F. Brown became childish and fretful, and would frequently complain of losing papers, and complainants thinking that he might sometime ask for the will in their possession and lose or misplace it, had an exact copy of it made, which is filed as an exhibit with the bill, and prayed to be read as part thereof; that about that time he asked for the will, saying that he wished to make some change in it as to a piece of land that his daughter, Mrs. Barton, was to get under the will; that it was given to him, and after some time, it not being returned, something was said about it, and he insisted that the will was still in the possession of complainants; that he spent some time on different occasions looking for it, and seemed greatly worried about it, and finally became so exasperated that he accused his daughter, Dora, one of complainants, with having stolen it; that the original will was never seen by them afterwards, but they indulged the hope that it might be found among the papers of decedent, in which, however, they had been disappointed. The complainants charge that so far as they were beneficiaries under the will they accepted it in good faith as a contract and in every particular lived up to its provisions, believing it to vest in them a good title, and relying upon the words and actions of Daniel F. Brown, they expended large sums of money in paying for and improving the property, Kite selling other property belonging to him and investing the money in the property in controversy, which, under the will, was the property of complainants; that said property was placed absolutely in their possession by Daniel F. Brown some years before his death, at the time the $1,200 was paid to Mrs. Driscoll, and the other children had taken possession of the property devised to them by the will, or were free to take possession thereof, so far as complainants were concerned, before the death of Daniel F. Brown, as complainants took nothing from it and did

not attempt to exercise any control over it, but confined all their acts of ownership and control to the land devised to them in said will. They charge that the exhibit filed with the bill is an absolutely correct copy of the last will and testament of Daniel F. Brown, which was delivered to them by him, under which the property therein devised to them was placed in their possession by Daniel F. Brown long before his death, accepted by them in good faith, and the provisions of said bill carried out by them in the payment of a large sum of money at the request of said Daniel F. Brown and with his full knowledge and consent, and they aver and charge that under said will they have received no more than an equal share with the other children in the estate of said decedent.

The prayer of the bill is that the exhibit filed with the bill may be declared the last will and testament of Daniel F. Brown, and as such admitted to probate; but if the court should not so hold, then complainants pray that the said paper may be treated as a contract entered into with them by the said Daniel F. Brown, which was accepted by them in good faith, and all its provisions binding upon them carried out with the knowledge and approval of Daniel F. Brown, and at his urgent request, up to the time of his death.

The children of Daniel F. Brown, other than Mrs. Driscoll, demurred to and answered this bill, and by their answer deny and put in issue all its material averments. Mrs. Driscoll also filed an answer, in which she states that she has no interest in the subject matter. She admits that she is the daughter of Daniel F. Brown; that her father made a will disposing of his property, and, among other provisions contained in said will, he gave to respondent and her sister, Dora V. Kite, the home-farm upon which he resided, with certain exceptions named in said will; that she saw and read the will, and her recollection with respect

to it is clear; that at the earnest request of her father, Kite raised the sum of $1,200 and paid it to her for her interest in the land that was under the will to go to her; that her father wrote the receipt and the said sum of $1,200 was paid to her by Kite, all parties fully understanding the transaction and knowing that the $1,200 was in full payment for her half interest in the land devised to her and her sister, as fully set forth in said will; that something was said at the time by Kite about a deed, but her father declared it was not necessary, that he had made it all right in his will, which he then gave to her sister and her husband, telling them to take it and keep it, that the property was theirs, and all parties having implicit confidence in the judgment of her father, acquiesced in all that he said and did, and everything was done and accepted in good faith.

Upon the pleadings and proofs the circuit court entered a decree appointing a commissioner to convey to F. W. Kite and Dora, his wife, the land claimed by them in their bill, and from that decree an appeal was awarded to Delilah Milton.

The first assignment of error is to the action of the court in overruling the demurrer to the plaintiff's bill. We think that the bill sets out a contract and such part performance of it as entitles the plaintiffs to a decree if sustained by the proof.

With respect to the charge that the bill is multifarious, as containing two grounds of relief—the specific performance of a contract, and the setting up of a will—we are of opinion that, even conceding that the two causes of action are sufficiently stated, they are but alternative statements of the same cause of action. The plaintiffs had but one object—to make good their title to the parcel of land in controversy. They claimed that Daniel F. Brown had made a will, in conformity with the statute, which had

never been revoked, and which they prayed might be set up, in which will the land which they claimed was devised to them; and if this could not be done, they prayed that the contract which they stated in the bill might be specifically executed. The case comes within the influence of *Seefried* v. *Clarke*, 113 Va. 365, 74 S. E. 204, so far as the charge of multifariousness is concerned.

We are further of opinion that the bill states a case for the specific execution of a contract which has been so far performed upon the part of the plaintiffs as that it would operate a fraud upon their rights to deny them the relief which they seek.

Among the depositions taken on behalf of the plaintiffs was that of Lenora A. Driscoll. The defendants excepted to her as being incompetent, the contention being that she was a party to the contract which is the subject of investigation.

Kite, at the instance of Daniel F. Brown, sold his land and paid to Mrs. Driscoll the sum of $1,200 upon the faith of Brown's promise that he would devise to Kite and his wife the share in his real estate which in the will he had executed he had devised to Mrs. Driscoll. Kite sold his land, paid the $1,200 to Mrs. Driscoll, and Daniel F. Brown wrote the receipt for the money. Mrs. Driscoll has no interest whatever in this litigation. As between Brown and Kite, she is not even liable for costs, and upon that ground her testimony was properly admitted.

The will, its execution and its contents are fully established by the proof. That Kite sold his land at the instance of Daniel F. Brown; that he went to live with Daniel F. Brown; that he took possession of the property in dispute; that he improved it and built a house upon it; that he and his wife remained with and cared for Daniel F. Brown and his wife during their lifetime, is fully proved.

It is true that "an agreement to dispose of property by

will cannot be specifically enforced, not in the lifetime of the party, because all testamentary papers are from their nature revocable; not after his death, because it is no longer possible for him to make a will; yet courts of equity can do what is equivalent to a specific performance of such an agreement by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with its terms, upon the ground that it is charged with a trust in the hands of the heir-at-law, devisee, personal representative, or purchaser with notice of the agreement, as the case may be." *Burdine* v. *Burdine,* 98 Va. 519, 36 S. E. 992, 81 Am. St. Rep. 741, which cites 3 Parsons on Contracts, sec. 406 (6th ed.) ; *Hale* v. *Hale,* 90 Va. 728, 19 S. E. 739.

For these reasons we are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*